**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 26-50001 (MMP) |
| CRUISING KITCHENS, LLC, *et al.*,[1] | § | (CHAPTER 11) |
| | § | (Jointly Administered) |
| | § | |
| DEBTORS. | § | |
| | § | |
| | § | |
| BOYNE USA, INC., *d/b/a*, BOYNE RESORTS, | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADVERSARY NO. 26-_____ |
| | § | |
| CRUISING KITCHENS, LLC AND CAMERON DAVIES, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORIGINAL COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF DEBT PURSUANT TO 11 U.S.C. § 523**

Boyne USA, Inc., *d/b/a* Boyne Resorts ("Boyne"), a creditor and holder of unsecured claims against Cruising Kitchens, LLC ("CK") and Cameron Davies ("Davies," and, together with CK, collectively, the "Debtors") in the above-captioned, jointly administered bankruptcy cases (the "Main Bankruptcy Cases"), files this Original Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523 (the "Complaint") against CK and Davies, the defendants listed herein (each a "Defendant" and collectively, the "Defendants"). In support thereof, Boyne respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective Tax ID Numbers or Social Security Numbers are as follows: Cruising Kitchens, LLC (7853); Cameron Davies (0042); and, Mary Davies (7296). The Debtors' address for purposes of notices is: 9503 Middlex, San Antonio, TX 78217.

**BOYNE'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**      **PAGE 1 OF 16**

## I.    SUMMARY OF COMPLAINT[2]

17.    Between October 2023 and June 2024, Boyne and CK agreed, pursuant to the Gatlinburg Agreement and the Snow Cat Agreement, that CK would construct two separate projects for Boyne to be deployed in connection with Boyne's business.  Despite Boyne's having remitted to CK full payment in connection with the Gatlinburg Agreement, CK delivered a product that failed to comply with the specifications of the Gatlinburg Agreement.  CK further failed to remedy the deficiencies or provide Boyne with a refund after notice and request from Boyne.  CK also failed to commence construction in connection with the Snow Cat Agreement, despite Boyne's having remitted a refundable deposit in connection with the same; CK also refused to return said deposit upon Boyne's request.

18.    Davies is the principal of CK and bears ultimate responsibility for CK's failure to fulfill the agreements with Boyne, misrepresentations made by CK to Boyne regarding CK's intention and ability to satisfy the parties' agreements, the return of any deposits in connection therewith, and the use or misappropriation of funds Boyne remitted pursuant to the agreements.  Davies' failure to ensure CK's compliance with the Gatlinburg Agreement and the Snow Cat Agreement, allowing CK to make misleading and/or fraudulent statements to Boyne regarding CK's ability to perform under the contracts, and failure to return and/or misappropriation of funds remitted by Boyne while CK was presumptively insolvent constitute breaches of his fiduciary duties to CK's creditors, including Boyne.

19.    As such, Boyne's claim against CK is based on its entering into the Gatlinburg Agreement and the Snow Cat Agreement while continually misrepresenting its ability and

---

[2] Certain undefined capitalized terms appearing in the Summary of Complaint are defined later in the Complaint.  Also, all references herein to the "Bankruptcy Code" shall mean title 11 of the U.S. Code.  Additionally, all references to the "Main Bankruptcy Cases" shall refer to the above-captioned cases jointly administered and pending before in this Court under Case No. 26-50001 (MMP).

intention to timely and satisfactorily fulfill the requirements of the same, and for refusing to return Boyne's deposit when it knew it lacked the ability or intention to commence the Snow Cat project. Instead of fulfilling CK's obligations under the Gatlinburg Agreement and the Snow Cat Agreement, on information and belief, Davies facilitated CK's misappropriation of Boyne's payments and continually misrepresented CK's intent and ability to complete the projects.

20. In this way, the Debtors' fraudulent representations caused damages to Boyne in the amount of no less than approximately $425,617.36 consisting of, without limitation, the costs Boyne incurred to bring the Shipping Bar Container into compliance with the Gatlinburg Agreement and the deposit related to the Snow Cat Agreement. The Debtors' actions are the subject of a civil action pending in the matter styled: *Boyne USA, Inc., d/b/a Boyne Resorts v. Cruising Kitchens, LLC*, Case No. 25-cv-542, in the U.S. District Court for the Western District of Texas, San Antonion Division (the "Litigation Action").

## II. CORPORATE DISCLOSURE STATEMENT

21. In accordance with Federal Rule of Bankruptcy Procedure 7007.1, Boyne avers that it is a family-owned, privately held company organized under the laws of the state of Michigan. It has no parent corporation and no publicly held corporation owns 10% or more of its stock.

## III. JURISDICTION, CONSENT TO ENTRY OF JUDGMENT, AND VENUE

22. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Standing Order 13-01 of the United States District Court for the Western District of Texas. The matters set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O).

23. The statutory predicates for the relief requested herein are Sections 523(a) and (c) of the Bankruptcy Code and Rule 7001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

24. Pursuant to Bankruptcy Rule 7008, Boyne consents to the entry of final orders or a judgment by the bankruptcy judge in this adversary proceeding.

25. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. PARTIES

26. Boyne is a is a family-owned, privately held company with its principal place of business located at 3951 Charlevoix Avenue, Petoskey, Michigan 49770.

27. Defendant Cruising Kitchens, LLC is a limited liability company formed under the laws of the state of Texas with its principal offices located at 9503 Middlex, San Antonio, Texas 78217.  CK may be served at its principal address above or through its counsel of record in the Main Bankruptcy Cases: Smeberg Law Firm, PLLC, Attn: Ronald J. Smeberg, 4 Imperial Oaks, San Antonio, Texas 78248.

28. Defendant Cameron Davies is an individual whose primary address is 305 Hill Country Lane, San Antonio, Texas 78232.  Cameron Davies may be served at his principal address above or through his counsel of record in the Main Bankruptcy Cases: Smeberg Law Firm, PLLC, Attn: Ronald J. Smeberg, 4 Imperial Oaks, San Antonio, Texas 78248.

## V. FACTUAL ALLEGATIONS

29. On January 2, 2026 (the "Petition Date"), CK and Davies each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors remain in possession, operation, and management of their business and property as debtors-in-possession pursuant to

Sections 1107 and 1108 of the Bankruptcy Code. The Main Bankruptcy Cases are being jointly administered for administrative purposes.

30. Since its founding in 1948, Boyne has been a family-owned pioneer in the ski industry and now represents a collection of independent mountain resorts and destinations in North America that offer outdoor experiences for every season and everyone. Boyne owns and operates, among others, Gatlinburg SkyPark Resort in Gatlinburg, Tennessee, and Big Sky Resort in Big Sky, Montana.

15. CK is a custom food truck builder and mobile business fabricator that specializes in food trucks and trailers, kitchen trucks and trailers, and shipping container trailers. CK promotes itself as a leading custom food truck builder and mobile business fabricator that builds "the most, professional, innovative and cool mobile businesses in the world."

16. Prior to the Petition Date, on October 26, 2023, Boyne and CK entered into that certain Build Agreement: "Boyne Resorts 20' Custom Bar Container" Project (the "Gatlinburg Agreement"),[3] pursuant to which CK agreed to build a 20' Custom Bar Shipping Container Bar Conversion (the "Shipping Container Bar") for Boyne for a price of $229,400.00, with an initial refundable deposit of $172,050.00 to be paid by Boyne at the start of the project, and the balance due upon completion of the build and prior to delivery to the Gatlinburg SkyPark Resort.

17. On March 29, 2024, Boyne paid to CK the initial refundable deposit required under the Gatlinburg Agreement in the amount of $172,050.00. The completion date for the Shipping Container Bar was to be within eleven (11) weeks of CK's receipt of the initial deposit, the build (shipping container), and equipment for the Shipping Container Bar.

---

[3] A true and correct copy of the Gatlinburg Agreement is attached hereto as **Exhibit A** and incorporated herein for all purposes.

18.     On or about June 3, 2024, unbeknownst to Boyne, CK and Blue Sky Bank ("BSB"), among other parties, submitted an *Agreed Order Appointing Receiver* (the "Receivership Order"), which Receivership Order was entered on June 3, 2024 by the 438th Judicial District Court of Bexar County, Texas in the matter styled: *Davies Enterprises, LLC, et al. v. Blue Sky Bank, et al.*, Cause No. 2023-CI-25557 (the "Receivership Action").[4]  The Receivership Order granted Chris Neilson of Trigild IVL (the "Receiver") control over substantially all of CK's assets, save for certain tracts of real property, and the authority to operate CK's business, including the power to "continue, initiate, or terminate contracts under service and other agreements as the Receiver determines . . . ."[5]

19.     Also, on or about June 3, 2024, contemporaneous with the entry of the Receivership Order, Boyne and CK entered into that certain Build Agreement: "Boyne Resorts, Snow Cat" Project (the "Snow Cat Agreement"),[6] whereby CK agreed to a convert a Snow Cat into a kitchen (the "Snow Cat Kitchen") for Boyne's Big Sky Resort in Big Sky, Montana ("Big Sky Resort"), for a price of $359,054.00, with an initial refundable deposit of $269,290.50 to be paid at the start of the project, and with the balance due upon completion of the build and prior to delivery.  Neither CK nor Davies ever made Boyne aware of its financial condition, the existence of the Receivership Action, the consideration or entry of the Receivership Order, or the appointment of the Receiver.  Indeed, at all times during the negotiation of the Snow Cat Agreement, and during subsequent communications regarding the Snow Cat Agreement and the

---

[4] A true and correct copy of the Receivership Order is attached hereto as **Exhibit B** and incorporated herein for all purposes.

[5] *See* Receivership Order, ¶ 2.

[6] A true and correct copy of the Snow Cat Agreement is attached hereto as **Exhibit C** and incorporated herein for all purposes.

Gatlinburg Agreement, CK represented that it had the authority and ability to engage in the transactions agreed to by the parties.

20.     On June 17, 2024, Boyne paid to CK the initial deposit of $269,290.50 required under the Snow Cat Agreement.  On July 6, 2024, Boyne delivered to CK's San Antonio facility (2100 Mannix Drive, San Antonio, Texas 78217) a 2017 PistenBully 600 Snowcat, VIN WKU5826MAAL011156, with steel tracks and blade (the "Snow Cat") for the conversion build. The Snow Cat Agreement required the Debtor to complete and deliver the Snow Cat Kitchen to the Big Sky Resort by December 6, 2024 (the "Completion Deadline") to ensure it would be available and open for business during the Big Sky Resort's peak season.

21.     On November 12, 2024, Philip Wallace (CK's COO) notified Boyne that the equipment to be installed on the Snow Cat Kitchen would ship within three days to three weeks, cutting it very close to the Completion Deadline. Around that same time, CK also sent revised renderings of the proposed Snow Cat Kitchen to Boyne that significantly deviated from the original renderings and changed the design and look of the build without Boyne's consent or approval.  Boyne never approved of this design change.

22.     On November 18, 2024, Boyne notified CK that the revised renderings for the Snow Cat Kitchen were far too boxy and that the Snow Cat Kitchen should not look like a box sitting on the Snow Cat.  Boyne and CK worked toward finalizing the design of the Snow Cat but to this date, the design of the Snow Cat Kitchen was never finalized.

23.     On November 27, 2024, Philip Wallace with CK notified Boyne that the Shipping Container Bar was ready to ship and sent the final invoice for the project which included the additional charges for two (2) bar fridges: (i) a Turbo Air TBBB-24-60SGD-N; and, (ii) a Turbo Air TBB-24-72SGND-N model (collectively, the "Fridges"), at a cost of $10,630.00, pursuant to

an agreed upon Change Order. On November 29, 2024, Boyne made the final payment of $57,350.00 to CK for the delivery of the Shipping Container Bar.

24. Also, on November 29, 2024, CK notified Boyne that the Snow Cat Kitchen would not be completed by the Completion Deadline, and that the new lead times for the shipment of the equipment for the Snow Cat Kitchen was now two to eight weeks. Boyne asked if similar equipment could be ordered from a different vendor to expedite the completion of the project in order for the Snow Cat Kitchen to be ready for peak season. In response, CK provided Boyne with alternative pricing for equipment from other vendors that could ship sooner, and Boyne requested that all of the equipment, except for the griddle, be ordered immediately to get the project completed in time for peak season. Despite Boyne's having repeatedly advised CK that the timely completion of the Snow Cat Kitchen was a critical part of the Snow Cat Agreement, CK later notified Boyne that the completion of the Snow Cat Kitchen would take an additional six (6) months. Upon hearing this news, Boyne requested a call that day to discuss the project.

25. On December 6, 2024, Boyne paid the additional $10,630.00 to CK for the two Fridges and soon thereafter received delivery of what was purported to be the Shipping Container Bar at the Gatlinburg SkyPark Resort. Upon receipt, Boyne noticed that the Shipping Container Bar delivered by CK did not meet the build specifications and was not constructed in accordance with the Gatlinburg Agreement in at least the following respects: (i) the roof line did not match the design; (ii) the compressor was used, contrary to the contractual warranty in Section 4.c.ii of the Gatlinburg Agreement which required all equipment to be purchased new; (iii) there was no exterior clapping on the container; (iv) equipment and parts were missing, including, countertops inside and outside the bar, the two (2) Fridges, and a 36" beer draft drain;

(v) the plumbing connections were incorrectly placed; (vi) the electrical panel delivered had no room for the 220v breakers needed for the equipment installed in the Shipping Container Bar; and, (vii) the lights delivered were not UL listed.

26. Given the time-sensitive nature of the projects and the upcoming holiday season opening, Boyne reached out to CK on several occasions to ascertain the status of the Snow Cat Kitchen, the correction of the issues with the Shipping Container Bar, and when CK would complete the outstanding work on the two projects, but received no response from CK. On December 16, 2024, Boyne asked CK to get on a phone call that day to discuss the direction of the Snow Cat Kitchen project and what options were available. CK did not respond to Boyne's urgent request to discuss the Snow Cat Kitchen project.

27. As a result of CK's failure to timely and satisfactorily complete the work on the Shipping Container Bar and the Snow Cat Kitchen, they were not available for Boyne's use during the 2024-25 winter holiday season.

28. By letter dated January 16, 2025, Boyne notified CK of the deficiencies in the construction of the Shipping Container Bar and demanded an update on when the significant issues would be resolved (the "January 2025 Correspondence").[7] CK did not respond to Boyne's demand to cure the defective construction of the Shipping Container Bar.

29. On January 31, 2025, Boyne again reached out to CK to discuss the Snow Cat Kitchen project and to determine if CK still planned on completing the project. CK did not respond to Boyne's inquiry and request for a status update. Unbeknownst to Boyne, however, CK had not even started the construction of the Snow Cat Kitchen as of end of January 2025.

---

[7] A true and correct copy of the January 2025 Correspondence from Boyne to CK is attached hereto as **Exhibit D** and incorporated herein for all purposes.

30.     By letter dated February 17, 2025, Boyne notified CK of its failure to deliver the Snow Cat Kitchen by the Completion Deadline and made demand for the refund of the initial deposit and return of the Snow Cat (the "February 2025 Correspondence").[8] CK did not respond to the February 2025 Correspondence or otherwise provide any timeline for curing its defaults under the Gatlinburg Agreement or the Snow Cat Agreement.

31.     On April 11, 2025, a representative of Boyne visited CK's facility to ascertain the status of the missing and/or deficient equipment related to the Shipping Container Bar and the status of the Snow Cat Kitchen. Upon inspection, Boyne's representative observed that the exterior clapping and some of the missing equipment related to the Shipping Container Bar was present at CK's warehouse. CK advised Boyne that it had not ordered the two Fridges because CK had not confirmed with its own accountant that payment related to the Change Order had been received, despite the fact that Boyne remitted payment for the two Fridges to CK via wire transfer on December 6, 2024.

32.     Boyne's representative also observed that the Snow Cat, with the steel tracks and blade, was present at CK's facility. However, CK had not ordered the equipment needed to construct the Snow Cat Kitchen as of that date despite having been asked by Boyne to do so on December 9, 2024, and despite CK's holding Boyne's initial deposit of $269,290.50 since June 17, 2024 and refusing to return the same since at least February 17, 2025.

33.     As a result, on May 15, 2025, Boyne filed the Litigation Action against CK.

---

[8] A true and correct copy of the February 2025 Correspondence is attached hereto as **Exhibit E** and incorporated herein for all purposes.

## VI.     CAUSES OF ACTION

34.     Under the Bankruptcy Code, not every debtor is afforded a fresh start—only the honest and unfortunate debtor.[9]  The Bankruptcy Code excepts certain debts from discharge in Section 523(a) of the Bankruptcy Code.

**COUNT I – EXCEPTION TO DISCHARGE UNDER BANKRUPTCY CODE SECTION 523(A)(2)(A) FOR DEBTS OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS AND/OR ACTUAL FRAUD**

35.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

36.     Section 523(a)(2)(A) of the Bankruptcy Code creates a rule of nondischargeability for any debt for money, property or services, or extension, renewal of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud."[10]  The purpose of excepting debts from discharge caused by false representations, false pretenses, or fraud is to prevent debtors from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not benefit dishonest debtors. Consequently, debts resulting from money or property that has been obtained by false pretenses, false representations or by means of actual fraud are not dischargeable.[11]

37.     Under Fifth Circuit precedent, the analysis courts engage in to determine whether a creditor's claim should be exempted from discharge due to the debtor's having made false representations differs slightly from the actual fraud analysis.[12]  In the case at bar, Boyne's claim is entitled to the exception to discharge under either the false representation or the actual fraud analysis.  Under the actual fraud analysis, a *prima facie* case of fraud exists if: (i) CK and/or Davies made a materially false representation to Boyne; (ii) at the time of the representation, CK

---

[9] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[10] 11 U.S.C. § 523(a)(2)(A).

[11] *Smith v. Cunningham* (*In re Cunningham*), 163 B.R. 657, 660 (Bankr. D. Mass. 1994).

[12] *Bank of La. v. Bercier* (*In re Bercier*), 934 F.2d 689, 692 (5th Cir. 1991).

and/or Davies knew such statement to be false; (iii) CK and/or Davies made the representation with the intent and purpose of deceiving Boyne; (iv) Boyne justifiably relied on the representation; and, (v) Boyne sustained a loss or damage as the proximate consequence of this representation having been made.[13]

38.     The Debtors defrauded Boyne.  When negotiating the Gatlinburg Agreement and the Snow Cat Agreement, CK conditioned commencement of construction on Boyne's remittance of a refundable deposit for each contract and represented that it would be able to source all required equipment and components for the Shipping Container Bar and the Snow Cat Kitchen by the Completion Deadline.  Debtors accepted the deposits from Boyne, as well as funds satisfying the Change Order and the balance of the contract price in connection with the Gatlinburg Agreement, while knowing that the Receivership Action remained pending, that it would not complete the Shipping Container Bar in accordance with the Gatlinburg Agreement and the Change Order, and that it would or could not even commence construction of the Snow Cat Kitchen by the Completion Date.  More, CK accepted the initial deposit under the Snow Cat Agreement, the final deposit under the Gatlinburg Agreement, and the payment for the Change Order in connection with the Gatlinburg Agreement all while the Receiver remained in control of CK's operations and assets, all while failing to inform Boyne of the existence of the Receivership Action, the Receiver, and the entry of the Receivership Order.

39.     Debtors continued to provide false representations to Boyne by stating that additional time was needed to remedy the deficiencies with the Shipping Container Bar and to complete construction of the Snow Cat Kitchen while never intending to make any attempt to do so.  Indeed, given the appointment of the Receiver and the authority granted to him, CK

---

[13] *See Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

**BOYNE'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**                    **PAGE 12 OF 16**

presumptively knew it lacked the authority to enter into the Snow Cat Agreement, and to determine whether to continue performing under and to accept payments in connection with the Gatlinburg Agreement and Snow Cat Agreement once the Receivership Order was entered. Debtors therefore clearly made such representations with the intent to deceive Boyne and to keep the funds Boyne remitted pursuant to the agreements.

40.     Boyne justifiably relied on the Debtors' statements given the express terms of the Gatlinburg Agreement, the Change Order, the Snow Cat Agreement, and CK's repeated statements regarding its ability to satisfy the agreements by the Completion Date or beyond.  As a direct result of the Debtors' representations, Boyne suffered damages including, but not limited to, costs to remedy the deficiencies in the Shipping Container Bar, lost revenue attributable to the unavailability of the Shipping Container Bar and the Snow Cat Kitchen by the Completion Date, and legal fees and costs in connection with pursuing its rights and remedies under the Gatlinburg Agreement, the Snow Cat Agreement, and applicable law.  As such, the Debtors are not entitled to discharge the indebtedness owed to Boyne under the actual fraud analysis of Section 523(a)(2)(A) of the Bankruptcy Code.

41.     The false representation analysis also prohibits the Debtors from receiving a discharge of their debt to Boyne.  A debtor's representations are considered false for purposes of Section 523(a)(2)(A) of the Bankruptcy Code if: (i) the debtor states a falsehood; (ii) describing past or current facts; (iii) that [was] relied upon by the other party.[14]  The elements for false representation are the same as those required for actual fraud under Section 523(a)(2)(A) of the Bankruptcy Code, but false representation does not require a showing of the Debtors' intent to deceive Boyne.  Accordingly, based on the foregoing analysis, in the event this Court finds that

---

[14] *Allison v. Roberts* (*In re Allison*), 960 F.2d 481, 483-85 (5th Cir. 1995).  Additionally, because Cameron Davies and Mary Davies are spouses, even if only one of spouse was involved in committing fraud against Boyne, fraud committed by one spouse may be imputed to the other spouse under theories of agency. *See id.* at 485-86.

the element of intent is not sufficiently established, Boyne's claim is still entitled to an exception to discharge under the false representation analysis of Section 523(a)(2)(A) of the Bankruptcy Code.

**COUNT II – EXCEPTION TO DISCHARGE UNDER BANKRUPTCY CODE SECTION 523(A)(4) FOR FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY, EMBEZZLEMENT OR LARCENY**

42.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

43.     Section 523(a)(4) of the Bankruptcy Code excepts debts from discharge if they arose from a debtor's acts of fraud or defalcation while acting in a fiduciary capacity.[15]     On information and belief, Davies, as principal of CK, oversaw or directed CK's defrauding Boyne while Davies was acting in a fiduciary capacity on behalf of all creditors of CK while CK was presumptively insolvent during the roughly eighteen months prior to the Petition Date (*i.e.*, at least since the entry of the Receivership Order).  Insofar as CK was insolvent during that period, Davies breached his fiduciary duties owed to Boyne by presumptively directing or overseeing CK's fraudulent conduct and/or misrepresentations.[16]  As a result, Boyne's debt is owed by CK and Davies, and Boyne is entitled to have the indebtedness owed by the Debtors excepted from discharge.

44.     Furthermore, Boyne's claim is also eligible to be excepted from discharge because CK obtained the money through larceny.[17]  CK unlawfully took Boyne's money with the intent of permanently depriving Boyne of it and failing to either deliver the products called for under the Gatlinburg Agreement or the Snow Cat Agreement or to provide Boyne with a commensurate refund upon request.   CK also accepted Boyne's funds and negotiated fulfillment of the

---

[15] 11 U.S.C. § 523(a)(4).

[16] *See, e.g., Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 534 & n.24 (5th Cir. 2004) (citing *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997)); *see also Jewel Recovery, L.P. v. Gordon* (*In re Zale Corp.*), 196 B.R. 348, 355 (N.D. Tex. 1996).

[17] *See* 11 U.S.C. § 523(a)(4).

agreements with Boyne despite the Receiver's having the express authority to do so.  Boyne did not give CK consent to appropriate its money for his own use or to be delivered to a Receiver, rather Boyne only consented to the money being used to complete the Shipping Container Bar and the Snow Cat Kitchen.  Yet, Davies ostensibly directed or oversaw CK's utilizing such funds for an unauthorized purpose or otherwise caused CK to fail to return or properly utilize such funds in accordance with the parties' agreements, which actions constituted a breach of Debtors' fiduciary duties owed to creditors such as Boyne while it was presumptively insolvent.  Boyne is therefore entitled to have the indebtedness owed by the Debtors excepted from discharge.

**COUNT III – EXCEPTION TO DISCHARGE UNDER BANKRUPTCY CODE SECTION 523(A)(6) FOR WILLFUL AND MALICIOUS INJURY BY THE DEBTOR TO ANOTHER ENTITY OR TO THE PROPERTY OF ANOTHER ENTITY**

45.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

46.     Section 523(a)(6) of the Bankruptcy Code excepts debts from discharge if they arose from a debtor's willful and malicious injury to another entity or the property of another entity.[18]  As outlined above, Debtors intended to and did permanently deprive Boyne of use of its money through fraud, false representation, and/or false pretenses as the Debtors received and retained payment for the Shipping Container Bar and the Snow Cat Kitchen.  Yet, CK and its assets and operations were controlled by a Receiver when the Snow Cat Agreement was executed, the Shipping Container Bar did not comply with the provisions of the Gatlinburg Agreement, the Snow Cat Kitchen was never delivered, and CK never returned Boyne's deposit under the Snow Cat Agreement or the funds related to the Change Order under the Gatlinburg Agreement, all of which resulted in damages to Boyne.  Accordingly, Boyne is entitled to have the indebtedness owed by the Debtors excepted from discharge.

---

[18] 11 U.S.C. § 523(a)(6).

## VII.    PRAYER

Boyne respectfully requests that this matter be set for trial, and that, after final hearing, judgment be entered against Defendants and in favor of Boyne for the following relief:

(1)    determining that Boyne's indebtedness related to the Gatlinburg Agreement and the Snow Cat Agreement is not subject to discharge pursuant to Section 523 of the Bankruptcy Code;

(2)    reasonable and necessary costs and fees incurred with respect to this action;

(3)    pre-judgment interest and post-judgment interest, at the highest rate allowed by law; and,

(4)    such other relief to which Boyne may be justly entitled, both at law and in equity.

**DATED: April 9, 2026.**

Respectfully submitted,

**WINSTEAD PC**

By:    _/s/ Sean B. Davis_
Sean B. Davis
Texas Bar No. 24069583
600 Travis Street, Suite 5200
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)
E-mail: sbdavis@winstead.com

and

James G. Ruiz
Texas Bar No. 17385860
600 W. 5th Street, Suite 900
Austin, Texas 78701
(512) 370-2800 (Telephone)
(512) 370-2850 (Facsimile)
E-mail: jruiz@winstead.com

**ATTORNEYS FOR BOYNE USA, INC.,**
_**d/b/a**_ **BOYNE RESORTS**

4009-9014-7665v.1 46387-11 7/10/2025
4924-7004-5086v.3 71916-1 4/9/2026